# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

DONALD GUILFORD, an individual;

          Respondent,

vs.

APM TERMINALS PACIFIC LLC, a
corporation; APM TERMINALS NORTH
AMERICA INC., a corporation; JANEE
ORTIZ, an individual; MARTY YARNALL,
an individual; and DOES 1 through 100,

          Petitioners.

CIVIL ACTION NO.:

2:24-cv-11003 (BRM) (MAH)

---

## RESPONDENT'S BRIEF IN OPPOSITION TO PETITIONERS APM TERMINALS PACIFIC, LLC AND AMP TERMINALS NORTH AMERICA, INC.'S MOTION TO COMPEL ARBITRATION

---

LAW OFFICES OF
GOLDMAN DAVIS KRUMHOLZ & DILLON, P.C.
THREE UNIVERSITY PLAZA, SUITE 410
HACKENSACK, NEW JERSEY 07601
(201) 488-2600
(201) 488-5059 (TELECOPIER)
ATTORNEYS FOR RESPONDENT

**On the Brief:**

EVAN L. GOLDMAN, ESQ. (ID NO.: 011871979)

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................... 1

II.    STATEMENT OF FACTS ................................................ 2

    A.    The Underlying Matter................................................ 2

        1.    First Term of Employment and the 2015 Superseded Severance Agreement...................................... 2

        2.    Second Term of Employment and the 2018 Controlling Agreement................................................ 2

    B.    The Procedural History.............................................. 3

III.    ARGUMENT................................................... 5

    A.    Petitioners Mislead The Court By Relying On A Superseded Agreement................................................ 5

    B.    Even If Not Superseded, the 2015 Superseded Severance Agreement Still Does Not Apply Here, Because It Was Limited to the Prior Employment Relationship................. 7

        1.    Scope of the 2015 Superseded Severance Agreement. 7

        2.    Limited Context and Intent of the Agreement.......... 8

        3.    Interpretation of "Arising Between the Parties"......... 9

    C.    Even If Not Superseded, the 2015 Arbitration Clause is Legally Unenforceable............................................. 9

        1.    It Is Procedural Unconscionability...................... 10

        2.    It Is also Substantive Unconscionability................. 10

        3.    Public Policy Considerations.............................. 11

    D.    The Arbitration Agreement Imposes Unreasonable Inconvenience on Respondent...................................... 12

        1.    Arbitration in New Jersey is Unduly Burdensome...... 12

        2.    Respondent's Residency and Financial Hardship...... 13

| | | | |
|---|---|---|---|
| E. | | Connection to New Jersey is Minimal............................ | 13 |
| | 1. | Lack of Fairness and Accessibility in Arbitration Venue.................................................................... | 13 |
| | 2. | Lack of Personal Jurisdiction: Petition Never Served on Respondent............................................ | 13 |
| IV. | | PETITIONERS HAVE WAIVED ANY RIGHT TO COMPEL ARBITRATION................................................................ | 14 |
| | A. | Petitioners Unreasonably Delayed in Seeking Arbitration...... | 15 |
| | B. | Petitioners Have Actively Participated in Litigation............ | 16 |
| | C. | Respondent Has Suffered Significant Prejudice................. | 16 |
| VII. | | CONCLUSION.................................................................. | 17 |

## TABLE OF AUTHORITIES

**California Statutes:**

California Code of Civil Procedure Section 1856(a)……………………    6

California Code of Civil Procedure Section 430.41……………………..    16

**Federal Cases:**

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)…………..    14

*Delta Funding Corp. v. Harris*, 189 N.J. 28, 39 (2006)……………………..    12

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)…………..    14

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350
(1999)…………………………………………………………………..    14

**California Cases:**

*Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 561 (2005)…………………..    10, 12

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83,
113 (2000)……………………………………………………………..    10, 11

*Cerritos Valley Bank v. Stirling* (2000) 81 Cal.App.4th 11……………………    6

*Gentry v. Superior Court*, 42 Cal. 4th 443, 463 (2007)…………………………    11

*Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981)……………………..    10

*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal. App. 4th 436, 447...    17

*Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003)……………………    11

*Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016 )……………………..    9

*Sobremonte v. Superior Court* (1998) 61 Cal. App. 4th 980, 992…………….    16

*St. Agnes Med. Ctr. v. PacifiCare of California* (2003) 31 Cal. 4th 1187, 1196    15

*Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 155 (2015)……………    9, 11

*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal. App. 4th 1107,    6
1120……………………………………………………………………………..

## II.    INTRODUCTION

The Petition to Compel Arbitration Pursuant to Verified Petition to Compel Arbitration in New Jersey (the "Petition") filed by Petitioners APM Terminals Pacific LLC and APM Terminals North America Inc. ("APM Terminals") (collectively, "Petitioners" or "APM") is procedurally and substantively defective.

First, the 2015 Superseded Severance Agreement, which Petitioners rely upon, does not apply to this dispute. That agreement was expressly tied to Respondent's prior term of employment, which ended in May 2015. Respondent's subsequent employment in 2018 was governed by a new agreement (the 2018 Controlling Agreement) that supersedes all prior agreements and lacks an arbitration provision.

Second, even if the 2015 Superseded Severance Agreement were found to apply—a conclusion Respondent strongly disputes—the arbitration clause is unenforceable. The clause is procedurally unconscionable as it was presented in a non-negotiable format under coercive circumstances tied to severance pay. It is substantively unconscionable because it imposes onerous terms, such as arbitration in New Jersey for a California resident, while disproportionately favoring Petitioners. The clause also conflicts with California's strong public policy protecting employee rights and ensuring access to remedies under state law.

Third, this Court lacks personal jurisdiction over Respondent. Petitioners failed to serve the Petition, and Respondent, a California resident, has no meaningful connection to New Jersey. All relevant events occurred in California, and the claims arise under California law.

Finally, Petitioners' petition reflects procedural gamesmanship and forum shopping. By filing in New Jersey, Petitioners seek to impose duplicative litigation and unnecessary burdens

on Respondent, undermining principles of fairness, judicial economy, and efficient dispute resolution.

For these reasons, Respondent respectfully requests that this Court deny the Petition in its entirety.

## III.   STATEMENT OF FACTS

### A.   The Underlying Matter

#### 1.   First Term of Employment and the 2015 Superseded Severance Agreement

In December 2014, Respondent Donald Guilford began his employment with Universal Maritime Services Corporation (UMSC), a subsidiary of APM Terminals North America, Inc. (APMTNA), as an Assistant Operations Manager at a facility in Charleston, South Carolina. (Guilford Decl. ¶ 2.) In May 2015, UMSC discontinued its operations in Charleston, resulting in a reduction in force that terminated Respondent's employment on or about May 17, 2015. (Guilford Decl. ¶ 3.)

As part of the termination process, Respondent was presented with a 2015 Superseded Severance Agreement and General Release ("2015 Superseded Severance Agreement"), which included an arbitration provision. (Guilford Decl. ¶ 4.) The 2015 Superseded Severance Agreement required any disputes to be resolved through arbitration in New Jersey and identified "Company Releasees" as its beneficiaries, including subsidiaries and affiliates of APMTNA. Respondent signed this agreement in exchange for a severance payment. (*Id.*)

#### 2.   Second Term of Employment and the 2018 Controlling Agreement

In May 2018, Respondent was rehired by APM Terminals Pacific LLC (APMTP) and APMTNA as an Operations Manager based in Los Angeles, California. (Guilford Decl. ¶ 5.) Respondent executed a new employment agreement titled "Offer Letter" on May 21, 2018 (the

2

"2018 Controlling Agreement"). (Guilford Decl. ¶ 5, Exh. 1.) The 2018 Controlling Agreement explicitly supersedes all prior agreements and includes a robust integration clause, which states:

> "This offer letter, together with the Confidentiality and Proprietary Rights Agreement, will be the entire agreement relating to your employment with the Company. You acknowledge that in deciding to sign this offer letter, you have not relied on any representations, promises, or commitments concerning your employment, whether spoken or in writing, made to you by any APM Terminals representative, except for what is expressly stated in this offer letter."

(*Id.*)

Unlike the 2015 Superseded Severance Agreement, the 2018 Controlling Agreement does not contain an arbitration provision. Instead, it governs all aspects of Respondent's employment relationship with APM Terminals, including compensation, benefits, at-will employment status and termination. Respondent worked under this agreement until his termination on May 12, 2023

.

### B.    The Procedural History

On May 24, 2024, Respondent served Petitioners with the Complaint in this action. (Abrolat Decl. ¶ 2, Exhs. 2-3.) At that time, Petitioners were fully aware of the claims brought against them and any arbitration-related issues they intended to raise. Despite having the ability to promptly address these issues in state court, Petitioners chose to delay their response, initiating a pattern of strategic delay and procedural maneuvering. (*Id.*)

On June 24, 2024, Petitioners removed this case to federal court. (Abrolat Decl. ¶ 4.) After three months of litigation in federal court, on September 30, 2024, the federal court granted Respondent's motion to remand the case back to this Court, finding no basis for federal

jurisdiction. (Abrolat Decl. ¶ 4, Exh. 1.) The case returned to California state court on October 11, 2024. (*Id.*)

On December 9, 2024, nearly seven months after being served with the Complaint, Petitioners filed a petition to compel arbitration in the District of New Jersey (the "Petition"). (Abrolat Decl. ¶ 5.) This action marked a stark departure from their earlier litigation strategy and reflected an intentional attempt to forum shop. (*Id.*)

Prior to filing the Petition, Petitioners did not notify Respondent of their intent to seek arbitration at this time, nor did they provide any justification for pursuing relief in a distant forum. (Abrolat Decl. ¶ 6, Exh. 5.) Instead, Petitioners had been asking Respondent to agree to stay the action to pursue mediation. (*Id.*) The decision to initiate a parallel proceeding in New Jersey—despite their ability to address arbitration since May—demonstrates bad faith and a disregard for judicial economy. (*Id.*)

On December 12, 2024, Petitioners brought an ex parte application, requesting an "emergency" need to stay this action pending resolution of the New Jersey proceeding. (Abrolat Decl. ¶ 7.) The Court granted Petitioners' application. (*Id.*)

Petitioners' reliance on the 2015 Superseded Severance Agreement as the basis for their arbitration argument is both misleading and legally unsound. Petitioners fail to disclose that Respondent entered into a new employment agreement in 2018 (the "2018 Controlling Integrated Agreement"), which contains an integration clause that supersedes prior agreements, which would include the 2015 Superseded Severance Agreement, which expressly states:

> "You acknowledge that in deciding to sign this offer letter you have not relied on any
> representations, promises or commitments concerning your employment, whether
> spoken or in writing, made to you by any APM Terminals representative, except for

what is expressly stated in this offer letter. You also acknowledge that this offer letter is intended as written, and that no marginal notations or other revisions to this offer letter are binding on the Company unless expressly consented to in writing by the undersigned. This offer letter, together with the Confidentiality and Proprietary Rights Agreement, will be the entire agreement relating to your employment with the Company."

(Abrolat Decl. ¶ 8; Guilford Decl. ¶¶ 2-7, Exh. 1.)

Due to this complete integration clause, the 2018 Controlling Integration Agreement governs the terms of Respondent's entire contractual relationship with APM Terminals as a matter of law. (Abrolat Decl. ¶ 9.) It has no arbitration provision and supersedes the 2015 Superseded Severance Agreement, rendering Petitioners' reliance on it legally improper. Despite being informed of the 2018 Controlling Agreement during meet-and-confer discussions and requesting copies from Petitioners, Petitioners omitted any reference to the 2018 Controlling Agreement in their filings. (*Id.*)

Throughout these proceedings, Respondent has acted diligently to move the case forward. (Abrolat Decl. ¶ 10.) Respondent has served written discovery and sought depositions and participated in meet-and-confer efforts. (*Id.*) In contrast, Petitioners have engaged in tactics designed to obstruct progress, delay discovery, and increase litigation costs. (*Id.*)

## IV.  ARGUMENT

### B.    Petitioners Mislead The Court By Relying On A Superseded Agreement

Petitioners' reliance on the 2015 Superseded Severance Agreement (the "2015 Superseded Severance Agreement") as the foundation for their arbitration argument is misleading at best. This 2015 Superseded Severance Agreement is no longer operative, as it was expressly

5

replaced by the subsequent 2018 employment agreement (the "2018 Controlling Integrated Agreement"), which lacks an arbitration provision and contains an integration clause explicitly superseding all prior agreements. Petitioners' failure to disclose this material fact not only undermines their argument but also potentially constitutes a fraud on the Court.

It is a fundamental principle of contract law that when a new agreement contains terms inconsistent with or replacing prior agreements, the later agreement governs the relationship between the parties. (*See Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal. App. 4th 1107, 1120.) Indeed, the court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract:

    (a)    Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement.

(Civ. Proc. Code § 1856(a); *accord Cerritos Valley Bank v. Stirling* (2000) 81 Cal.App.4th 11.)

Here, the 2018 Controlling Agreement's integration clause makes it the exclusive document governing the terms of Respondent's employment, invalidating the arbitration clause in the Superseded Agreement. Respondent explicitly raised the existence of the Controlling Agreement during meet-and-confer efforts and clearly identified its relevance to the arbitration issue. (*See* Guilford Decl. ¶ 5, Exh. 1, *Correspondence Regarding Controlling Agreement.*) Petitioners were fully aware of this fact but omitted it from their Petition. Such conduct is not only a violation of their duty of candor to the Court.

Deliberately withholding the Controlling Agreement—a document central to this dispute—deprives the Court of the necessary information to adjudicate the matter fairly and

equitably. Courts have long condemned such conduct as it undermines the judicial process and obstructs justice.

**C.**    **Even If Not Superseded, the 2015 Superseded Severance Agreement Still Does Not Apply Here, Because It Was Limited to the Prior Employment Relationship**

Petitioners seek to apply the arbitration provision of the 2015 Superseded Severance Agreement to Guilford's Fair Employment and Housing Act and wrongful termination claims from the 2018 term of employment. But the 2015 Superseded Severance Agreement was a narrowly tailored contract that applied specifically to Respondent's initial employment term with Universal Maritime Services Corporation (UMSC), a subsidiary of APM Terminals North America, Inc. (APMTNA). Respondent's employment with UMSC ended on May 17, 2015, as part of a company-wide reduction in force. The purpose of the agreement was to provide severance pay in exchange for a release of claims related to that specific termination.

**1.**    **Scope of the 2015 Superseded Severance Agreement**

More specifically, the 2015 Superseded Severance Agreement defined the scope of "arbitrable disputes" as follows:

> "[A]ny dispute (an 'Arbitrable Dispute') now or hereafter arising between you and any of the Company Releasees, including but not limited to ... claims concerning the formation, validity, interpretation, effect, or alleged violations of this Agreement ... [and] claims of any sort" must be submitted to arbitration in New Jersey."

(Guilford Decl. ¶ 8, Exh.8.)

While the language includes the term "now or hereafter," the context of the agreement limits its application to disputes tied to the severance and termination of employment in 2015.

7

Key provisions demonstrate that the agreement was forward-looking only to the extent necessary to address claims connected to the 2015 employment relationship:

Condition of Severance Payment: The agreement required Respondent to waive claims related to the 2015 termination as a condition for receiving severance pay. This clearly ties the purpose of the arbitration clause to resolving disputes arising out of the 2015 employment termination.

Release Language: The release of claims covered "any and all claims" up to the point of signing, further confirming its backward-looking focus on disputes tied to Respondent's initial term of employment.

### 2.    Limited Context and Intent of the Agreement

Further, the 2015 Superseded Severance Agreement was executed solely to resolve claims arising from Respondent's employment termination in 2015. It was not intended to govern subsequent employment relationships, particularly those entered into under entirely new terms and conditions, as evidenced by the following:

Reduction in Force-Specific Language: The agreement was explicitly tied to Respondent's termination as part of a reduction in force. This reflects the intention to close out disputes tied to that discrete employment relationship, not to bind the parties indefinitely to arbitration for all future disputes.

No Indication of Long-Term Applicability: The agreement lacks any language suggesting it was intended to govern future, unrelated employment relationships. In order for Guilford to have agreed to arbitrate future claims stemming from future employment, the Agreement had to put him on notice that it applied to future claims and future employment, which it did not.

8

Provisions Tied to Termination Benefits: The severance pay and other benefits outlined in the agreement were contingent on the resolution of claims tied to the specific termination, not open-ended disputes arising from any and all future dealings between the parties.

### 3.    Interpretation of "Arising Between the Parties"

The phrase "arising between the parties" in the arbitration clause must be read in light of the overall purpose and context of the agreement. Courts interpret such language narrowly when it appears in agreements tied to specific events or circumstances.

The agreement focuses exclusively on disputes tied to the severance arrangement and Respondent's termination. Applying it to disputes arising from an unrelated employment relationship years later would stretch its language beyond its intended scope and purpose.

Since courts avoid interpretations that would render an agreement overly broad or unreasonable in scope (*see Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016 ))[1], the 2015 Superseded Severance Agreement does not apply here.

Thus, when read in its entirety, the 2015 Superseded Severance Agreement is event-specific, addressing the claims and disputes arising from Respondent's employment termination in 2015. It was neither intended nor structured to apply to future employment relationships or disputes unrelated to the severance. Any attempt to extend its arbitration clause to the 2018 rehire is inconsistent with the agreement's text and purpose.

### D.    Even If Not Superseded, the 2015 Arbitration Clause is Legally Unenforceable

### 1.    It Is Procedural Unconscionability

---

[1] California law governs the dispute because Guilford resides in California, performed all work in California, and the claims arise under California employment laws. California has a strong public policy interest in protecting employees and ensuring their statutory rights are preserved (*Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 155 (2015).)

The arbitration clause in the 2015 Superseded Severance Agreement was presented in a standard-form severance package tied to Respondent's termination in 2015. (Guilford Decl. ¶ 9.) It was not open to negotiation, and Respondent was required to sign the agreement as a condition for receiving critical severance pay during a vulnerable period following a reduction in force.

Respondent had no meaningful opportunity to review or negotiate the terms of the arbitration provision. This is a hallmark of procedural unconscionability (*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113 (2000).)

Additionally, the context of the agreement—requiring acceptance to receive severance after termination—placed undue pressure on Respondent to agree, further establishing procedural unconscionability. (*See e.g., Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981).)

### 2.    It Is also Substantive Unconscionability

The arbitration clause imposes overly burdensome and one-sided terms that unfairly benefit Petitioners at Respondent's expense:

New Jersey Forum: The requirement that arbitration occur in New Jersey places an undue financial and logistical burden on Respondent, a California resident. Traveling to New Jersey for arbitration involves significant costs, including airfare, accommodations, and time away from work. These burdens disproportionately harm Respondent while presenting no comparable inconvenience to Petitioners, large corporations with national resources. (*See Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 561 (2005).)

Lack of Mutuality: The arbitration provision is unbalanced, disproportionately restricting Respondent's rights while preserving Petitioners' ability to litigate certain claims in court. Courts

10

routinely reject such one-sided provisions as substantively unconscionable. (*See Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003).)

Restriction of Remedies: The arbitration clause does not explicitly preserve Respondent's statutory rights under California law, such as punitive damages and attorney's fees, which are central to employment claims. This lack of clarity risks restricting Respondent's remedies, further supporting a finding of unconscionability. (*See Armendariz*, 24 Cal. 4th at 103.)

### 3.    Public Policy Considerations

Enforcing the 2015 arbitration clause would violate California's strong public policy protections for employees and conflict with fundamental fairness principles:

California Law Prohibits Waiver of Statutory Rights: California law prohibits mandatory arbitration clauses that waive non-waivable statutory rights, such as those under the FEHA and Labor Code. (*Gentry v. Superior Court*, 42 Cal. 4th 443, 463 (2007).) The arbitration clause risks depriving Respondent of protections provided by California law, particularly if arbitrated under New Jersey law.

Focus on Employee Rights: California courts are particularly protective of employee rights and disfavor arbitration clauses that undermine the ability to enforce those rights effectively. The 2015 agreement, by failing to preserve statutory remedies and requiring arbitration in a distant forum, undermines these principles. (*See Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 155 (2015).)

Conflict with California Sovereign Interests: California has a vested interest in protecting employees working within the state. Forcing Respondent to arbitrate in New Jersey disregards California's interest in resolving disputes under its laws.

11

Cumulative Unconscionability and Public Policy Violations: Both procedural and substantive unconscionability are present in the 2015 arbitration clause. Additionally, its terms conflict with California's strong public policies aimed at protecting employees. Even if the Court finds the 2015 agreement applicable—a conclusion Respondent disputes—the arbitration clause cannot be enforced.

California and New Jersey laws both disfavor arbitration clauses that unfairly disadvantage employees or violate public policy. (*See Delta Funding Corp. v. Harris*, 189 N.J. 28, 39 (2006).) Forcing Respondent to arbitrate under these terms contravenes principles of fairness, accessibility, and substantive rights protections.

In sum, the 2015 arbitration clause is unenforceable due to procedural and substantive unconscionability, as well as its direct conflict with California's public policy. Enforcing the clause would impose unreasonable burdens on Respondent, strip him of statutory protections, and violate the fundamental fairness principles underlying California and New Jersey law.

### E.    The Arbitration Agreement Imposes Unreasonable Inconvenience on Respondent

#### 1.    Arbitration in New Jersey is Unduly Burdensome

Requiring Respondent to arbitrate disputes in New Jersey imposes unreasonable logistical, financial, and personal burdens, particularly given his residence in California and the lack of any meaningful connection between this dispute and New Jersey. Courts have consistently declined to enforce forum selection clauses or arbitration agreements when they impose undue hardship on one party. (*See Aral, supra,* 34 Cal. App. 4th at 561.)

#### 2.    Respondent's Residency and Financial Hardship

Respondent resides in California and worked in California during the period relevant to this dispute. Travel to New Jersey for arbitration would require substantial expenses for airfare, accommodations, and missed work, creating significant financial strain. (Abrolat Decl. ¶ 11.)

Petitioners, as large corporate entities, possess the resources to litigate in California, where the events giving rise to this dispute occurred. The disparity in resources further amplifies the burden on Respondent.

### F. Connection to New Jersey is Minimal

The only link to New Jersey is the arbitration provision in the 2015 Superseded Severance Agreement, which does not apply to the current employment relationship governed by the 2018 Controlling Agreement. The claims arise from Respondent's employment in California, and the governing law for the employment relationship (California law) has no nexus to New Jersey.

### 1. Lack of Fairness and Accessibility in Arbitration Venue

Arbitration proceedings should provide an accessible alternative to court litigation. Here, the requirement to arbitrate in New Jersey undermines the principle of accessibility by imposing geographical and financial barriers. This burden contradicts the Federal Arbitration Act's (FAA) intent to facilitate streamlined dispute resolution, as it unnecessarily complicates and delays resolution for Respondent.

Petitioners have strategically invoked the New Jersey arbitration clause to create an inconvenient and prejudicial forum for Respondent. This tactic is inconsistent with principles of fairness and undermines judicial efficiency.

### 2. Lack of Personal Jurisdiction: Petition Never Served on Respondent

Petitioners have failed to serve the petition to compel arbitration on Respondent Donald Guilford, depriving this Court of personal jurisdiction over him. Under both federal and state law, proper service of process is a fundamental prerequisite to exercising jurisdiction over a party (*See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).)

Petitioners have provided no evidence of service on Respondent. The docket reflects no proof of service, nor has Respondent received any notification or summons regarding the petition. Gilford decl.

Even if Petitioners had properly served the petition, this Court lacks personal jurisdiction over Respondent. Respondent is a resident of California, and the events giving rise to this dispute occurred entirely in California. A forum selection clause alone does not establish personal jurisdiction unless the agreement is valid and applicable, which it is not in this case. (*See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).)

To establish personal jurisdiction, Petitioners must demonstrate that Respondent has sufficient "minimum contacts" with New Jersey, such that exercising jurisdiction would not offend "traditional notions of fair play and substantial justice" (*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).)

Respondent's employment and the claims at issue are entirely tied to California. Respondent has no business, residence, or other significant connection to New Jersey that would support jurisdiction.

While the 2015 Superseded Severance Agreement includes a New Jersey forum selection clause, Respondent disputes the enforceability and applicability of that agreement to this dispute.

## V.    PETITIONERS HAVE WAIVED ANY RIGHT TO COMPEL ARBITRATION

Petitioners have unequivocally waived their right to compel arbitration through their active and deliberate participation in this litigation. Waiver occurs when a party engages in conduct inconsistent with an intent to arbitrate, particularly when such conduct delays the proceedings or prejudices the opposing party. (*St. Agnes Med. Ctr. v. PacifiCare of California* (2003) 31 Cal. 4th 1187, 1196.)

California courts consider several factors in determining whether a party has waived its right to compel arbitration, including:

1. Whether the party has unreasonably delayed in seeking arbitration.

2. The extent to which the party has participated in litigation.

3. The prejudice suffered by the opposing party.

(*Id.*)

Petitioners' conduct meets all these criteria and establishes a clear waiver of any right to compel arbitration, let alone more delay in the form of a stay to pursue a frivolous petition to compel arbitration in New Jersey based on the Superseded Agreement while hiding the Controlling Integrated Agreement.

### A.    Petitioners Unreasonably Delayed in Seeking Arbitration

Petitioners delayed nearly seven months before filing their petition to compel arbitration on December 9, 2024. Respondent served the Complaint on May 24, 2024, and Petitioners could have raised arbitration as an issue at any time thereafter. Instead, they chose to:

- Remove the case to federal court on June 24, 2024, without asserting arbitration as a defense.

- Engage in litigation and procedural motions in federal court, including opposing remand, further delaying the case.

15

- Wait until after the case was remanded to state court on October 11, 2024, before even beginning to consider arbitration.

This unexplained and unjustified delay reflects a strategic decision to litigate in court rather than pursue arbitration, undermining the core purpose of arbitration: swift and efficient resolution of disputes. (*See Sobremonte v. Superior Court* (1998) 61 Cal. App. 4th 980, 992 [unreasonable delay of 10 months after service of complaint in invoking arbitration constitutes waiver].)

### B.    Petitioners Have Actively Participated in Litigation

Petitioners' actions throughout this case are inconsistent with an intent to arbitrate. Courts have found participation in litigation to constitute waiver when it demonstrates a preference for the judicial process over arbitration. (*Sobremonte, supra,* 61 Cal. App. 4th at 995.) Here, Petitioners have removed the case, filed procedural motions, including attacking the complaint and opposing remand in federal court, without raising arbitration as a defense, participating in case management and meet-and-confer processes such as following remand, Petitioners engaged in discussions about scheduling mediation and requesting a stipulated stay without asserting arbitration. Petitioners proposed specific mediators and timelines, demonstrating a willingness to litigate rather than arbitrate.

Petitioners also sought multiple extensions under California Code of Civil Procedure Section 430.41 to respond to Respondent's Complaint, delaying the case further and demonstrating inconsistent conduct. Such litigation conduct is fundamentally at odds with the intent to resolve the matter through arbitration.

### C.    Respondent Has Suffered Significant Prejudice

16

Petitioners' delay and litigation conduct have caused substantial prejudice to Respondent. Prejudice occurs when a party is forced to expend significant time and resources litigating a case that the other party later seeks to move to arbitration. The prejudice here includes that Respondent has been forced to litigate procedural issues in both state and federal courts, incurring unnecessary costs and delays due to Petitioners' tactics.

By filing a new arbitration petition in New Jersey, Petitioners have created duplicative litigation efforts, requiring Respondent to defend identical issues in two forums simultaneously. Petitioners repeatedly sought extensions and delayed filing motions, creating uncertainty and hindering Respondent's ability to efficiently prosecute the case. These delays and costs have undermined the efficiency and cost-saving objectives of arbitration, directly prejudicing Respondent. (*See Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal. App. 4th 436, 447 [prejudice arises from the costs and delays caused by litigation inconsistent with arbitration].)

## VI.    CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Court deny Petitioners' motion to compel arbitration in its entirety and grant such other relief as the Court deems appropriate.

Respectfully Submitted,

Dated:

GOLDMAN DAVIS
KRUMHOLZ & DILLON, P.C.
*S/ Evan L. Goldman*
Attorneys for Respondent
Donald Guilford